COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Beales and Senior Judge Willis
Argued by teleconference


LAGENE V. WATKINS

v.      Record No. 0342-06-1

CITY OF HAMPTON DEPARTMENT
 OF SOCIAL SERVICES

LAGENE V. WATKINS

v.      Record No. 0364-06-1
                                                    MEMORANDUM OPINION[*]
CITY OF HAMPTON DEPARTMENT                               PER CURIAM
 OF SOCIAL SERVICES                                 SEPTEMBER 19, 2006

LAGENE V. WATKINS

v.      Record No. 0365-06-1

CITY OF HAMPTON DEPARTMENT
 OF SOCIAL SERVICES

LAGENE V. WATKINS

v.      Record No. 0366-06-1

CITY OF HAMPTON DEPARTMENT
 OF SOCIAL SERVICES


            FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                         Wilford Taylor, Jr., Judge

         J. Robert Harris, III, for appellant.

         Rachel Allen, Assistant City Attorney, for appellee.

         Robert G. Saunders (The Law Firm of Thomas L. Hunter, P.C., on
         brief), Guardian *ad litem* for the infant children.

_____

         [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

In a proceeding involving LaGene V. Watkins' ("father") minor children, S. and K., father argues that the trial court erred by changing the goal from return home to adoption. He also maintains the trial court erred by terminating his parental rights. Because the trial court's decisions were based solely upon father's incarceration, we vacate those decisions and remand to the trial court for further proceedings on the motion to rehear filed by father upon his release from prison.

### Background

On appeal, we view the evidence in the "'light most favorable' to the prevailing party in the circuit court and grant to that party the benefit of 'all reasonable inferences fairly deducible therefrom.'" Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767 (2005) (quoting Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)).

S., born February 12, 1998, and K., born April 29, 1999, were removed from their residence, along with their infant half-sister, on March 16, 2004. Father was incarcerated at the time of their removal, as was mother, who had been arrested on March 11, 2004. Mother and her children had been living with her boyfriend, Eric Logan, since 2001. On March 12, 2004, Logan was arrested and charged with six counts of felony child abuse of S. and K. These charges arose after S. and K. came under the care of the Hampton Department of Social Services ("DSS"). S. and K. had severe belt marks, areas of scabbing, and broken skin on their face, arms, and back.

Social worker Shelley Matthews, testifying on behalf of DSS, stated that the three children remained together in the same foster home since their removal. She visited them "monthly" and observed a strong bond between them and their foster mother.

At the time of removal, father's anticipated release date was in 2011. As father remained incarcerated at the time of the termination hearing on January 4, 2006, a guardian *ad litem* was

appointed to represent him. On father's behalf, the guardian *ad litem* opposed termination and offered into evidence a letter from father indicating he did "not want to lose [his] kids" and that he had "relatives who [could] help [him]" but that he "[could not] get in touch with them."

Matthews testified at the termination hearing she was aware of father's incarceration and was readily able to determine where he was incarcerated. However, Matthews noted, "He has not had any contact with me, and I have not had any contact with him." She further acknowledged she had not attempted to get in touch with father to ascertain whether he had any relatives who presented potential placements for the children.

Matthews stated that father had not initially been "considered for placement or for any sort of services" because of his anticipated 2011 release date, but Matthews admitted she became aware, sometime prior to the termination hearing, that father's anticipated release date had changed from 2011 to January 5, 2006, the day after the termination hearing. Nevertheless, Matthews stated she would not have proceeded any differently had she known of the new release date at an earlier "stage in the proceeding." She explained that even assuming a January 2006 release date, the children would have been in foster care for two years prior to his release, and would require additional time in foster care to allow father time "to [get] on his feet" after his release.

At the time of the termination hearing, the parties presented conflicting evidence about whether father would be released on January 5, 2006 or in 2011. After hearing the evidence, the trial court approved a change in goal to adoption and terminated father's parental rights. The next day, on January 5, 2006, father was released from prison. On January 10, 2006, father filed a motion to rehear with the trial court, citing his release and seeking the opportunity to present evidence on his behalf. The trial court denied his motion, and these appeals followed.

<u>Analysis</u>

Father argues the trial court erred by changing the goal from return to parent to adoption when he was incarcerated and when he was opposed to the change. He also argues that the trial court erred in basing its decision to terminate his parental rights solely upon his incarceration. Because we agree that the trial court erred in terminating father's parental rights, we also vacate the trial court's decision to approve the change in goal to adoption.[1]

In essence, father challenges the sufficiency of the evidence supporting the circuit court's termination under Code § 16.1-283(C)(2). "When addressing matters concerning a child . . . the paramount consideration of a trial court is the child's best interests." <u>Logan</u>, 13 Va. App. at 128, 409 S.E.2d at 463. "In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." <u>Farley v. Farley</u>, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990). When reviewing a decision to terminate parental rights, we presume that the trial court "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." <u>Id.</u> at 329, 387 S.E.2d at 796. Furthermore, "where, as here, the trial court heard the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." <u>Martin v. Pittsylvania County Dep't of Soc. Servs.</u>, 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986).

"[W]e have held that 'long-term incarceration does not, *per se*, authorize termination of parental rights . . . .'" <u>Harrison v. Tazewell County Dep't of Soc. Servs.</u>, 42 Va. App. 149, 163, 590 S.E.2d 575, 582 (2004) (quoting <u>Ferguson v. Stafford Dep't of Soc. Servs.</u>, 14 Va. App. 333,

---

[1] "Our decision [in reference to] the termination order necessarily subsumes this aspect of [his] appeal because a preponderance-of-the-evidence standard governs judicial modifications of foster care plans." <u>Toms</u>, 46 Va. App. at 265 n.3, 616 S.E.2d at 769 n.3 (citing <u>Richmond Dep't of Soc. Servs. v. Carter</u>, 28 Va. App. 494, 497, 507 S.E.2d 87, 88 (1998); <u>Padilla v. Norfolk Div. of Soc. Servs.</u>, 22 Va. App. 643, 645, 472 S.E.2d 648, 649 (1996)).

340, 417 S.E.2d 1, 5 (1992)).  We have recognized, however, that long-term incarceration "'is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support a court's finding by clear and convincing evidence that the best interests of the child will be served by termination.'"  Id. (quoting Ferguson, 14 Va. App. at 340, 417 S.E.2d at 5).

Here, father was incarcerated at the time of the children's removal and continued to be incarcerated at the time of the termination hearing, but DSS presented no other evidence in support of the petition to terminate his parental rights.  DSS acknowledged it had "no contact" with father, and presented no evidence regarding whether the children had any bond with their father or his family, or whether he had the ability to care for his children upon his release.  At the time of the hearing, DSS admitted it was aware that father might be released the next day; however, it noted that such information had no impact upon its decision to seek termination of father's parental rights.  Because the only proof offered by DSS in support of its petition for termination was the fact of father's incarceration, it failed to prove by clear and convincing evidence that adoption was in the children's best interests.  Id.

Accordingly, we vacate the trial court's decision terminating father's parental rights and remand this case for further proceedings on father's motion to rehear.

Vacated and remanded.