COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Beales and Senior Judge Fitzpatrick


LAGENE V. WATKINS

v.      Record No. 3191-06-1

CITY OF HAMPTON
  DEPARTMENT OF SOCIAL SERVICES

LAGENE V. WATKINS

v.      Record No. 3192-06-1                    MEMORANDUM OPINION*
                                                      PER CURIAM
CITY OF HAMPTON                                      JUNE 26, 2007
  DEPARTMENT OF SOCIAL SERVICES

LAGENE V. WATKINS

v.      Record No. 3193-06-1

CITY OF HAMPTON
  DEPARTMENT OF SOCIAL SERVICES

LAGENE V. WATKINS

v.      Record No. 3194-06-1

CITY OF HAMPTON
  DEPARTMENT OF SOCIAL SERVICES


        FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                   Wilford Taylor, Jr., Judge

        (J. Robert Harris, III, on brief), for appellant.  Appellant submitting
        on brief.

        (Rachel Allen, Assistant City Attorney, on brief), for appellee.
        Appellee submitting on brief.

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

(Robert G. Saunders, Guardian *ad litem* for the minor children; The Law Firm of Thomas L. Hunter, P.C., on brief.) Guardian *ad litem* submitting on brief.

Lagene V. Watkins appeals the termination of his parental rights to his two children, S. and K., pursuant to Code § 16.1-283(C)(2). Watkins argues that the trial court erred in changing the goal in the care plan to adoption while he was incarcerated and that the Hampton Department of Social Services (HDDS) failed to provide him services during and after his incarceration. We disagree and affirm.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991). So viewed, the evidence proved that on March 16, 2004, HDSS took legal custody of S. and K. due to abuse by their mother's boyfriend. Watkins was incarcerated at the time HDSS took custody of S. and K. In October 2005, the court approved the change of the foster care plan goal to adoption for S. and K. In January 2006, the parental rights of the mother of the children and Watkins were terminated. Watkins was released from incarceration two days after the January 2006 termination hearing and he filed a motion for rehearing, which the court denied. This Court vacated the decision terminating Watkins' rights because it was based solely upon his incarceration and remanded the case for further proceedings on Watkins' motion to rehear. Watkins v. City of Hampton Dep't of Soc. Servs., Record Nos. 0342-06-1, 0364-06-1, 0365-06-1 and 0366-06-1 (Va. Ct. App. Sept. 19, 2006).

On December 12, 2006, the trial court held a hearing on Watkins' motion to rehear the termination of his parental rights. Shelley Matthews, a HDSS worker, testified that the initial service plan in 2004 was to return the children to the home or place them with relatives. Although

Watkins was incarcerated at the time, the service plan contained certain goals for him. Watkins was to complete parenting classes, complete a substance abuse evaluation, secure housing, secure employment, maintain contact with his children, demonstrate the ability to insure the safety of his children, demonstrate a commitment to work towards the goal of reunification, make voluntary financial contributions, and follow through with all recommendations of HDSS. Matthews testified Watkins failed to complete any of the recommendations and HDSS did not have the ability to provide services to an incarcerated individual. Mathews testified that Watkins did not send any letters or attempt to contact S. and K. while he was incarcerated. Matthews met with Watkins one time while he was incarcerated, and he provided names of two relatives, his stepfather and his step-sister, who might be able to care for his children. Matthews talked with Watkins' step-father, but Watkins' step-sister did not return her phone call. Matthews testified that HDSS did not typically place children with a non-blood relative.

S. was born on February 12, 1998 and K. was born on April 21, 1999, and Matthews testified that Watkins' last contact with them was in 2002 when he was incarcerated. Matthews testified S. and K. were doing well with their foster family. Matthews testified that while Watkins was not incarcerated between January 2006 and August 2006, he contacted her once and she told him to contact his lawyer since his parental rights had been terminated in January 2006.

Watkins was released from incarceration in January 2006, but was arrested in August 2006, and was incarcerated at the time of the December 12, 2006 rehearing. Watkins testified that he received the goals of the 2004 service plan and attended a parenting class while incarcerated, but he did not attend a substance abuse program because he did not think it was necessary. After he was released from incarceration, Watkins was unemployed. Watkins admitted he failed to take advantage of job skills training while he was incarcerated. Watkins testified that he wanted to reunite with S. and K. and admitted that the foster parents took good care of S. and K. After he was

released from incarceration, Watkins wanted S. and K. to remain with the foster family until he was able to care for them.

ANALYSIS

Watkins argues that the trial court erred in changing the goal to adoption while he was incarcerated.

The proceeding in this case was commenced as a foster care service plan review pursuant to Code § 16.1-282. "Recognizing that 'Code § 16.1-282 sets forth no specific standard of proof for the establishment or modification of foster care plans,' we recently held that 'proof by a preponderance of the evidence is the appropriate standard' to apply in proceedings under Code § 16.1-282." Richmond Dep't Soc. Servs. v. Carter, 28 Va. App. 494, 496-97, 507 S.E.2d 87, 88 (1998) (quoting Padilla v. Norfolk Div. of Soc. Servs., 22 Va. App. 643, 645, 472 S.E.2d 648, 649 (1996)).

"When addressing matters concerning a child . . . the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463. "In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990).

In this case, the trial court did not err in changing the goal to adoption while Watkins was incarcerated. HDSS attempted to reunite S. and K. with their mother, but her parental rights were eventually terminated. HDSS attempted to place S. and K. with maternal relatives, but it was unable to locate a suitable relative willing to take S. and K. Watkins gave two names to HDSS for possible placement, but the individuals were not blood relatives, and they were either unable or unwilling to be considered for placement of S. and K. Watkins failed to maintain any contact with S. and K. while he was incarcerated, and his last contact with them was in 2002. Watkins failed to

participate in substance abuse counseling and job training while he was incarcerated, and after he was released from incarceration, he did not secure employment, but was arrested and convicted on a new charge. S. and K. have been in foster care since March 2004, and at the rehearing in December 2006, Watkins remained incarcerated and admitted he was unable to care for S. and K. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). Based upon a review of the circumstances, the trial court did not err in changing the goal of the foster care plan to adoption.

Watkins also argues that HDSS failed to provide him with any services while he was incarcerated and after his release in January 2006.

Code § 16.1-283(C)(2) requires proof, by clear and convincing evidence that:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Ferguson v. Stafford Dep't of Soc. Servs., 14 Va. App. 333, 338, 417 S.E.2d 1, 4 (1992).

"The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal, unless plainly wrong or without evidence to support it.'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (quoting Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988)).

Whether services must be offered to an incarcerated parent was addressed by this Court in Harrison v. Tazewell County Dep't of Soc. Servs., 42 Va. App. 149, 590 S.E.2d 575 (2004). There, we stated

> we find no merit in [the father's] contention . . . that Code § 16.1-283(C)(2) required the Department to offer him services during his incarceration. It would be patently unreasonable to require the Department, under such circumstances, to continue to offer such services. . . . [A]s long as he was incarcerated, the Department would have no avenue available to offer [the father] services aimed at assisting him in regaining custody of the child.

Id. at 163-64, 590 S.E.2d at 583.

After HDSS took custody of S. and K., it sent Watkins the service plan, which contained certain goals for him. Although Watkins took a parenting class while he was incarcerated, he failed to meet the goals and failed to maintain contact with S. and K. HDSS was not required to offer Watkins services while he was incarcerated; the prison offered substance abuse services and job training, but Watkins failed to participate in the programs. Based upon these circumstances, we find no error in either the court's determination that HDSS "reasonably and appropriately" carried out its charge as required by the statute or in the court's determination that HDSS proved by clear and convincing evidence that Watkins had been unwilling or unable within a reasonable period of time to remedy substantially the conditions which led to S.'s and K.'s foster care placement, despite the efforts of HDSS.

Based upon the foregoing, we affirm the trial court's decision to terminate Watkins' parental rights pursuant to Code § 16.1-283(C)(2).

Affirmed.