COURT OF APPEALS OF VIRGINIA


Present: Judges Kelsey, Petty and Senior Judge Bumgardner


GRINSIS YASMIN RIVERA

                                                            MEMORANDUM OPINION[*]
v.      Record No. 2319-08-4                                    PER CURIAM
                                                              MARCH 10, 2009
FAIRFAX COUNTY DEPARTMENT OF
  FAMILY SERVICES


                    FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                              Stanley P. Klein, Judge

            (Wayne D. Berthelsen, on brief), for appellant.

            (David P. Bobzien, County Attorney; Peter D. Andreoli, Jr., Deputy
            County Attorney; Kimberly P. Baucom, Assistant County Attorney;
            Neal David Olesker, Guardian *ad litem* for minor child E., on brief),
            for appellee.

            (Matthew W. Greene; Martin, Arif & Greene, PLC, on brief),
            Guardian *ad litem* for minor child A.


        Grinsis Yasmin Rivera (mother) appeals the trial court's order terminating her parental

rights to her two children.  Mother contends that the trial court erred by finding the evidence

sufficient to terminate her parental rights to her children and by not placing one of her children with

a relative.  Upon reviewing the record and briefs of the parties, we conclude that this appeal is

without merit.  Accordingly, we summarily affirm the decision of the trial court.  See Rule

5A:27.

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

So viewed, the evidence showed that mother had two children, E. and A.[1]  During the summer of 2006, mother was involved with the City of Alexandria's Child Protective Services Unit because she allegedly burned E. with a cigarette lighter.  Mother left E. in his paternal grandmother's care in order to prevent him from being placed in foster care.  On November 28, 2006, the Fairfax County Department of Family Services (the Department) became involved in E.'s case when E.'s father abused him and E. was taken to the hospital with injuries.  The Department subsequently placed E. in foster care.  E.'s father did not give accurate information as to mother's whereabouts, so she was not immediately aware of the fact that E. was placed in foster care.  On January 3, 2007, the Department met with mother to discuss E. and his father. The Department discussed the services that it was recommending for mother, including alcohol and drug evaluation, mental health treatment, and parenting classes.  Mother asked the Department not to place E. with his paternal grandmother because the paternal grandmother taught E.'s father how to abuse E.  On February 16, 2007, the court ordered mother to participate in the alcohol and drug evaluation, psychological evaluation, parent/child assessment, and parenting classes.  Mother also had to maintain stable housing and employment, resolve her criminal and legal issues, and follow the recommendations of the evaluators.

On February 20, 2007, mother was incarcerated.  Mother's second child, A., was in the hospital at the time.  He was born prematurely and tested positive for marijuana at birth.  When he was released on February 27, 2007, the Department took custody and placed A. in foster care.

---

[1] We will use initials to refer to the children.

Prior to her incarceration, mother had not obtained any services recommended by the Department. Mother was not forthright with the Department about her expected release date and frequently moved to different prison facilities. Mother also told the Department that an Immigration and Customs Enforcement detainer was pending, and she might be deported upon her release from prison.

While mother was incarcerated, the Department attempted to coordinate services for mother. Mother was aware of the substance abuse treatment available in prison, but chose not to participate. Mother said that she received a mental health evaluation, but could not provide proof to the Department.

While incarcerated, mother asked the Department to place E. with his paternal grandmother. The Department investigated the paternal grandmother as a possible placement. The paternal grandmother participated in a psychological evaluation and parent/child assessment, but she did not follow through with the psychologist's recommendations.

On April 30, 2008, the juvenile and domestic relations district court (JDR court) terminated mother's parental rights to A. and approved the foster care plan of adoption. On May 12, 2008, the JDR court terminated mother's parental rights to E. and approved the foster care plan of adoption. Mother appealed both orders. On July 29, 2008, the circuit court heard the matter concerning A., and on August 11-12, 2008, the circuit court heard the matter concerning E. The parties agreed that the evidence produced in A.'s trial could be considered by the court in E.'s case. On August 26, 2008, the circuit court terminated mother's rights to E. and A. and found that the paternal grandmother was not a suitable placement for E. Mother timely noted her appeal.

ANALYSIS

When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Id. at 128, 409 S.E.2d at 463. "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania County Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

Termination of parental rights to A.

Mother argues that there was not sufficient evidence to support a termination of parental rights to A. Mother's parental rights were terminated pursuant to Code § 16.1-283(C)(2).[2]

Mother was an inmate when A. was born on November 29, 2006, but she was released on bond approximately one week after A.'s birth. A. was born prematurely and tested positive for marijuana at birth. Due to his medical problems, A. had to remain in the hospital for several months after his birth. Mother admitted to the child protective services investigator that she smoked marijuana three months into her pregnancy and participated in a party where others were smoking marijuana three weeks prior to A.'s birth. While A. was in the hospital, mother met with the Department and reviewed what the Department was asking of her, including an alcohol and drug evaluation, mental health treatment, and parenting classes. However, mother did not follow through with any of the Department's recommendations. One week before his release from the hospital, mother was incarcerated again, and she made no arrangements for A. On

---

[2] Code § 16.1-283(C)(2) states a parent's parental rights may be terminated if:

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

February 27, 2007, the Department obtained an emergency removal order and took A. into custody when he was discharged from the hospital.

Mother contends that the Department failed to use reasonable efforts to remedy the conditions that led to or required A. to remain in foster care. Mother argues that the Department failed to make the necessary referrals for services while she was incarcerated and that her incarceration led to her termination of parental rights.

"'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Ferguson v. Stafford County Dep't of Soc. Servs., 14 Va. App. 333, 338, 417 S.E.2d 1, 4 (1992).

> While long-term incarceration does not, per se, authorize termination of parental rights . . . it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support a court's finding by clear and convincing evidence that the best interests of the children will be served by termination.

Id. at 340, 417 S.E.2d at 5.

Here, mother did not make any efforts to seek the services recommended by the Department prior to her incarceration on February 20, 2007. Once incarcerated, mother frequently moved from one facility to another. She also told the social worker that her incarceration was short-term, and it was not until January 2008 that the social worker learned that mother had a two-year sentence. Mother also told the Department that an Immigration and Customs Enforcement detainer had been lodged against her and that she might be deported upon her release. Nevertheless, the Department attempted to coordinate services for mother for drug treatment and mental health services while she was incarcerated. Mother refused to participate in substance abuse treatment. She said that she obtained a mental health evaluation, but could not produce the paperwork to the Department.

The trial court noted that mother did not prepare for A. and his needs; instead, she "was going out in three different jurisdictions and committing six separate felony offenses, which led to her being incarcerated" on February 20, 2007. The trial court explained that mother did not make any effort to seek services before incarceration nor did she participate in the programs offered by the jails. On the contrary, mother came up "with different rationales and excuses why she has not gotten herself involved in those programs." The trial court found that A. has extensive needs, and even at the hearing, mother still did not have a plan on how to care for A.

The Department made reasonable efforts to provide services to mother, but mother did not make any efforts to follow through on the Department's recommendations. The evidence was sufficient to terminate her parental rights for A.

Termination of parental rights to E.

Mother argues that there was not sufficient evidence to support a termination of parental rights to E. Mother's parental rights were terminated pursuant to Code § 16.1-283(C)(2).

In November 2006, E. entered foster care when his father abused him. E.'s paternal grandmother had custody of him because mother gave her custody of E. in order to prevent him from entering foster care. Mother had burned E. with a cigarette lighter. Mother was aware that E.'s paternal grandmother and father abused him. E. had lived with his mother sporadically prior to the abuse and, in fact, mother had not seen E. for six to eight months prior to the abuse. Mother met with the Department and reviewed its recommendations. Mother did not seek any services and was incarcerated on February 20, 2007.

As with A., mother argues that the Department did not provide reasonable services to her while she was incarcerated and that her incarceration led to the termination of her parental rights to E.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

"We will not allow [mother], however, to use her incarceration as reason to excuse her prior neglectful treatment of her children or to say that her failure to remedy the conditions in her home was without good cause." Harris v. Lynchburg Div. of Soc. Servs., 223 Va. 235, 242, 288 S.E.2d 410, 414 (1982); see also Harrison v. Tazewell County Dep't of Soc. Servs., 42 Va. App. 149, 164, 590 S.E.2d 575, 583 (2004).

Mother already had been involved with social services concerning E. prior to the November 2006 incident. The Department discussed with mother what she needed to do, including obtaining an alcohol and drug evaluation, mental health treatment, and parenting classes. However, mother made no efforts to obtain these services prior to her incarceration. She also refused to seek substance abuse treatment while she was incarcerated.

The evidence was sufficient to terminate mother's parental rights to E., and the Department provided reasonable services to her.

<u>Relative placement</u>

Mother argues that the trial court erred in not placing E. with his paternal grandmother. Initially, mother asked the Department not to place E. with his paternal grandmother because she taught E.'s father how to abuse E.; however, mother denied making this statement at trial.

"[T]he court shall give a consideration to granting custody to relatives of the child, including grandparents." Code § 16.1-283(A).

> [B]efore the court grants custody of a child, under the provisions of
> Code § 16.1-283(A) the Department has a duty to produce
> sufficient evidence so that the court may properly determine
> whether there are relatives willing and suitable to take custody of

the child, and to consider such relatives in comparison to other placement options.

Logan, 13 Va. App. at 131, 409 S.E.2d at 465.

Here, the Department presented evidence of the paternal grandmother as a possible relative placement. The Department arranged for a psychological evaluation and a parent/child assessment of the paternal grandmother. The psychologist concluded that there was little attachment between the paternal grandmother and E. and that the paternal grandmother had little understanding of E.'s needs or development. One of the psychological tests also revealed that the paternal grandmother had a potential for abusive or neglectful behavior. The paternal grandmother did not follow through with the psychologist's recommendation of participating in counseling. The paternal grandmother did not keep in touch with the Department, and she did not complete the background check paperwork. At the time of the circuit court's trial, the paternal grandmother was involved with child protective services relating to the care of her own children.

The trial court's main concern with placing E. with the paternal grandmother was the potential for further abuse – "That boy will be abused again if that boy is with his paternal grandmother, and I'm not going to let that happen to that child." Despite the paternal grandmother's denial, the trial court found that the paternal grandmother would allow E.'s father to see E., which meant that E. would be exposed to abuse from his father again. The trial court also found that the paternal grandmother would resort to her methods of discipline, including cold showers, locked rooms, and belts, when E. acts out as E. "is presently acting out and, unfortunately, will be acting out for the foreseeable future." The trial court concluded that the paternal grandmother was not a reasonable or viable option for relative placement, and the evidence supports this conclusion.

CONCLUSION

The record supports the trial court's finding that the evidence proved by clear and convincing evidence that mother's parental rights to A. and E. should be terminated and that the termination of mother's parental rights was in the children's best interests. Code § 16.1-283. Furthermore, the record supports the trial court's finding that the paternal grandmother was not a viable relative placement. Accordingly, we summarily affirm the judgment. See Rule 5A:27.

Affirmed.