COURT OF APPEALS OF VIRGINIA

Present: Judges Alston, Decker and Senior Judge Coleman

UNPUBLISHED

CHRISTINA MAXSON, S/K/A
 CHRISTY MAXSON

                                                         MEMORANDUM OPINION[*]
v.      Record No. 0455-14-4                                   PER CURIAM
                                                           DECEMBER 16, 2014

STAFFORD COUNTY DEPARTMENT
 OF SOCIAL SERVICES

                      FROM THE CIRCUIT COURT OF STAFFORD COUNTY
                                   J. Martin Bass, Judge

               (James J. Ilijevich, on brief), for appellant.

               (Catherine Miller Saller; Ellen B. Hagan, Guardian *ad litem* for the
               infant child, on brief), for appellee.


        Christina Maxson, s/k/a Christy Maxson (hereinafter "mother"), appeals the termination of

her residual parental rights to her child, A.M.  Mother asserts the evidence was insufficient to

justify termination of her parental rights because it failed to prove that the Stafford County

Department of Social Services ("the Department") provided reasonable and appropriate efforts to

assist her in remedying the conditions that led to A.M.'s foster care placement.  For the reasons

stated, we affirm the trial court's decision.

                                        Background

        When reviewing a decision to terminate parental rights, we presume the circuit court

"'thoroughly weighed all the evidence, considered the statutory requirements, and made its

determination based on the child's best interests.'"  Toms v. Hanover Dep't of Soc. Servs., 46

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Va. App. 257, 265-66, 616 S.E.2d 765, 769 (2005) (quoting Fields v. Dinwiddie Cnty. Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005)).

On November 13, 2012, mother left her seven-month-old daughter, A.M., alone in a motel room strapped into a car seat perched on top of a bed.  Mother left her alone for approximately two hours while mother smoked crack cocaine with a friend.  The police were notified when the baby's cries were heard.  When the police arrived, they found the child in an overturned car seat "hanging upside down."  Drug paraphernalia was in the room with the baby, and when mother finally returned, she "reeked of alcohol."  Mother was charged with felony cruelty to children and child abuse and neglect.  Blood tests showed mother had cocaine, Butalbital, and Tramadol in her system.  Mother stated that A.M. might test positive for marijuana and cocaine "because of the heavy drug use in the room."

A.M. was removed and placed in foster care.  Although mother was incarcerated, the initial foster care plan in January 2013 established a goal of return home.  By June 2013, however, the Department decided to seek termination of mother's parental rights.  Upon further investigation, it learned that mother was a fugitive from Florida at the time of her arrest.  Mother had fled from Florida to Virginia while pregnant with A.M.  She acknowledged she had used drugs and alcohol during her pregnancy and that she was homeless.  From the time of A.M.'s birth, mother and child had lived in several counties with several different caretakers.  Other than A.M., mother had three other children, none of whom she was able to parent.[1]

On February 10, 2014, the trial court terminated mother's parental rights pursuant to Code § 16.1-283(C)(2).  This appeal followed.

---

[1] Mother had one of the children while she was incarcerated on the charges related to A.M.  Mother agreed to place this child in an adoptive home.

<u>Analysis</u>

The "termination of residual parental rights is a grave, drastic, and irreversible action,"

<u>Helen W. v. Fairfax Cnty. Dep't of Human Dev.</u>, 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29

(1991), and we presume the trial court "'to have thoroughly weighed all the evidence, considered

the statutory requirements, and made its determination based on the child's best interests,'"

<u>Logan v. Fairfax Cnty. Dep't of Human Dev.</u>, 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)

(quoting <u>Farley v. Farley</u>, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990)).  "The trial court's

judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless

plainly wrong or without evidence to support  it.'"  <u>Id.</u> (quoting <u>Peple v. Peple</u>, 5 Va. App. 414,

422, 364 S.E.2d 232, 237 (1988)).

The trial court terminated mother's parental rights pursuant to Code § 16.1-283(C)(2).  That

section provides that termination is warranted

> if the court finds, based upon clear and convincing evidence, that it
> is in the best interests of the child and that:
>
>      *       *       *       *       *       *       *
>
> The parent . . . without good cause, ha[s] been unwilling or unable
> within a reasonable period of time not to exceed 12 months from
> the date the child was placed in foster care to remedy substantially
> the conditions which led to or required continuation of the child's
> foster care placement, notwithstanding the reasonable and
> appropriate efforts of social, medical, mental health or other
> rehabilitative agencies to such end.  Proof that the parent or
> parents, without good cause, have failed or been unable to make
> substantial progress towards elimination of the conditions which
> led to or required continuation of the child's foster care placement
> in accordance with their obligations under and within the time
> limits or goals set forth in a foster care plan filed with the court or
> any other plan jointly designed and agreed to by the parent or
> parents and a public or private social, medical, mental health or
> other rehabilitative agency shall constitute prima facie evidence of
> this condition.  The court shall take into consideration the prior

efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care.

Code § 16.1-283(C)(2).

Mother contends the evidence was insufficient to warrant termination of her parental rights because the Department failed to provide her with reasonable and appropriate services. However, the record demonstrates that mother was incarcerated from the time of A.M.'s removal until the time mother's parental rights were terminated.

In Harrison v. Tazewell Cnty. Dep't of Soc. Servs., 42 Va. App. 149, 590 S.E.2d 575 (2004), we stated that, "as long as [a parent] [i]s incarcerated, the Department [has] no avenue available to offer [the parent] services aimed at assisting h[er] in regaining custody of the child." Id. at 163-64, 590 S.E.2d at 583. "'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Ferguson v. Stafford Cnty. Dep't of Soc. Servs., 14 Va. App. 333, 338, 417 S.E.2d 1, 4 (1992).

Here, the record supports the trial court's determination that the Department made reasonable and appropriate efforts to communicate with mother and to strengthen the parent-child relationship. At the time A.M. was removed, she was only seven months old. After finding mother guilty of abuse or neglect, the juvenile and domestic relations district court ordered reasonable visitation between mother and A.M. at the Department's discretion, but only "upon [mother's] release from [incarceration]." This order was entered on January 15, 2013, and mother appeared before the court on that date represented by counsel. Mother cites nothing from the record suggesting she objected to the court's disposition, and she never petitioned for visitation through her attorney. Furthermore, while the Service Manual of the Virginia Department of Social Services directs social workers to "[m]aintain contact" between a child and an incarcerated parent, nothing in the manual dictates "contact" through visitation in jail or

prison. As for other forms of contact, such as telephone calls, A.M. was too young to engage in conversation with her mother.

Devonne Johnson, the social worker assigned to mother, testified that the initial service plan contemplated offering multiple services to mother upon her release from jail. This plan was drafted, however, prior to mother being sentenced on multiple criminal charges. By November 15, 2013, mother had received a sentence totaling six years, with four years suspended, and was awaiting transfer from the regional jail to the penitentiary. Johnson explained that the Department could not offer any services outside of the jail, but he confirmed with mother's case manager, Darlene Gallahan, that mother had partially complied with the initial service plan goals during her incarceration.

> [W]hile long-term incarceration does not, per se, authorize termination of parental rights or negate the Department's obligation to provide services, it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support a court's finding by clear and convincing evidence that the best interests of the children will be served by termination.

Id. at 340, 417 S.E.2d at 11-12. "'[P]ast actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold.'" Linkous v. Kingery, 10 Va. App. 45, 56, 390 S.E.2d 188, 194 (1990) (quoting Frye v. Spotte, 4 Va. App. 530, 536, 359 S.E.2d 315, 319 (1987)).

In addition to her incarceration, mother had a long history of drug abuse and had been diagnosed with traumatic stress disorder and manic depression. Prior to her incarceration, she was unemployed, homeless, and unable to care for her other children. A.M. tested positive for cocaine, and mother admitted using drugs during her pregnancy with A.M. Mother continued to place her need for drugs above A.M.'s best interests after A.M.'s birth, leaving the infant alone in a motel room for hours while mother used cocaine. These circumstances, combined with

mother's incarceration, when viewed as a whole, constituted clear and convincing evidence that termination of mother's parental rights was in A.M.'s best interests, that mother was unwilling or unable to remedy substantially the conditions leading to A.M.'s foster care placement within twelve months of her removal, and that the Department made reasonable and appropriate efforts to assist mother in remedying the conditions leading to A.M.'s removal.

Accordingly, we summarily affirm the trial court's decision.  <u>See</u> Rule 5A:27.

<u>Affirmed.</u>