COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Humphreys, McCullough and Senior Judge Bumgardner


SHONDA RENEE LINDSEY

                                                    MEMORANDUM OPINION*
v.      Record No. 1271-14-4                              PER CURIAM
                                                     JANUARY 20, 2015
STAFFORD DEPARTMENT OF SOCIAL SERVICES


                    FROM THE CIRCUIT COURT OF STAFFORD COUNTY
                                Sara L. Deneke, Judge

            (Timothy W. Barbrow, on brief), for appellant.

            (Catherine Miller Saller; Terence J. Patton, Jr., Guardian *ad litem* for
            the minor child, on brief), for appellee.


        Shonda Renee Lindsey (mother) appeals an order terminating her parental rights.  Mother

argues that the trial court erred by finding that (1) it was in the best interests of the child to terminate

mother's parental rights; (2) the Stafford Department of Social Services (the Department) used

reasonable efforts to reunite the child with mother or another family member; (3) mother did not

have good cause for being unable to remedy the condition that led to the child's placement in foster

care within twelve months; (4) the Department offered reasonable and appropriate services to

mother; and (5) mother's incarceration alone was sufficient to terminate her parental rights.  Upon

reviewing the record and briefs of the parties, we conclude that this appeal is without merit.

Accordingly, we summarily affirm the decision of the trial court.  See Rule 5A:27.

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

Mother, an inmate at Fluvana Correctional Center, gave birth to a child in September 2012. Mother had arranged for her sister to take the baby from the hospital, but after two weeks, her sister never picked up the baby. The hospital contacted the Department, which took custody of the baby on October 4, 2012.

Initially, the Department filed a foster care plan with the goal of return to home or relative placement. The Department contacted mother's grandmother about caring for the child, but she was unable to care for the baby because she was "medically fragile" and taking care of mother's three older children. Mother's aunt was helping the grandmother take care of the three older children and could not care for the baby. Mother's brother, who lived in New York, filed a petition for custody. On October 15, 2013, the baby was placed with her uncle in New York. On November 8, 2013, the baby was returned to the Department because she had difficulty adjusting to her uncle's home.

Mother anticipated being incarcerated until July 2015. The Department encouraged mother to take advantage of the services in jail, including parenting classes and vocational training. The Department also informed her of the foster care protocol, gave her case updates, reviewed the service plan with her, enlisted her input regarding the baby's needs, informed her of the child's health, participated with her in Family Partnership meetings, and offered her supportive counseling.

In March 2014, the Department filed a foster care plan with the goal of adoption. Aside from the three weeks with her uncle, the child had been living in the same foster care home since

she was a few weeks old.  She bonded with her foster care family.  On April 15, 2014, the Stafford County Juvenile and Domestic Relations District Court (the JDR court) terminated mother's parental rights and approved the foster care plan with the goal of adoption.  Mother appealed to the circuit court.

At the April 15, 2014 JDR court hearing, mother's aunt expressed interest in custody for the first time.  However, after the hearing, she did not follow through with any of the necessary paperwork or speak with the Department about custody.

On June 2, 2014, the circuit court heard evidence and argument.  The circuit court found that it was in the child's best interests to terminate mother's parental rights pursuant to Code § 16.1-283(C)(2).  On June 25, 2014, the circuit court entered orders memorializing its rulings.  This appeal followed.

ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it."  Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

*Assignments of error 1 and 3*

Mother argues that the trial court erred in finding that it was in the child's best interests to terminate mother's parental rights.  She notes that she gave birth while incarcerated.  There was no showing of abuse or neglect.  She had tried to arrange for a relative to care for the child until her release in July 2015.  However, her sister did not take the child from the hospital as originally planned.  Mother's grandmother and aunt were unable to care for the child.  Mother's brother took the child for three weeks, but returned the child because the placement did not work.

A court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or
> unable within a reasonable period of time not to exceed twelve
> months from the date the child was placed in foster care to remedy
> substantially the conditions which led to or required continuation
> of the child's foster care placement, notwithstanding the
> reasonable and appropriate efforts of social, medical, mental health
> or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

Although mother argues that she was going to be released in July 2015, there was no evidence that mother would have been able to care for the child at that time. She did not have a relationship with the child. Her grandmother already was raising her three older children due to mother's incarceration and prior convictions. The child needed stability.

At the time of the circuit court hearing, the child was twenty months old. She had bonded with her foster family, with whom she has lived since she was two weeks old.[1] The child was thriving and doing well. Although mother's brother expressed interest in custody of the child, the placement did not go well. Mother's brother told the social worker that the child "cried more than not, was a little aggressive with their young daughter, also." He returned the child to the Department after three weeks.

When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

Mother was not capable of providing a safe and stable home for the child. No relatives were available to take custody of the child. The circuit court stated, "There simply is no alternative that is being offered that is safe and secure and loving and stable for her [the child], which is not a commentary on your [mother's] family, it is the facts at this point." The circuit court found that mother was unable, not unwilling, to remedy the situation, within twelve

---

[1] The child also lived three weeks with mother's brother.

months, that led to the child being placed in foster care. The circuit court explained that although mother expected to be released from prison in July 2015, her release was still more than one year away, and "a year in the life of a child is a long, long time."

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Considering the totality of the evidence, the circuit court did not err in terminating mother's parental rights.

*Assignment of error 2*

Mother argues that the trial court erred in finding that the Department made reasonable efforts to reunite the child with her or her family.

Before terminating a parent's rights, "the court shall give a consideration to granting custody to relatives of the child, including grandparents." Code § 16.1-283(A). The "Department has a duty to produce sufficient evidence so that the court may properly determine whether there are relatives willing and suitable to take custody of the child, and to consider such relatives in comparison to other placement options." Logan, 13 Va. App. at 131, 409 S.E.2d at 465.

Contrary to mother's arguments, the Department investigated several of her relatives for placement. Mother's sister did not pick up the child from the hospital. Mother's brother had custody of the child for three weeks, but ultimately returned her because she did not adjust well. Mother's grandmother and aunt told the Department that they were unable to care for the child. The aunt later expressed interest in custody at the termination hearing in the JDR court; however, she never pursued custody after the hearing.

The circuit court did not err in finding that the Department had considered several relatives as placement options, but due to the circumstances of her family, none were able to assume custody.

*Assignment of error 4*

Mother argues that the trial court erred in finding that the Department offered reasonable and appropriate services to mother. Mother contends the Department offered her no services because she was incarcerated.

"'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Ferguson v. Stafford Cnty. Dep't of Soc. Servs., 14 Va. App. 333, 338, 417 S.E.2d 1, 4 (1992).

Contrary to mother's arguments, the Department offered her services while she was incarcerated. She was encouraged to take parenting classes and further her vocational skills. The Department also kept her informed of the child's progress and health. It updated her on the foster care plans and participated with her in Family Partnership meetings.

In Harrison v. Tazewell Cnty. Dep't of Soc. Servs., 42 Va. App. 149, 163-64, 590 S.E.2d 575, 583 (2004), this Court addressed providing services to a father who was incarcerated and stated:

> [W]e find no merit in [father's] contention on appeal that Code § 16.1-283(C)(2) required the Department to offer him services during his incarceration. It would be patently unreasonable to require the Department, under such circumstances, to continue to offer services. . . . Thus as long as he was incarcerated, the Department would have had no avenue available to offer [father] services aimed at assisting him in regaining custody of the child.

Likewise, the Department in this case offered reasonable and appropriate services to mother while she was incarcerated. The circuit court did not err in holding that the Department

- 6 -

offered mother "services that were reasonable within the factual situation and alternatives that [it] had."

*Assignment of error 5*

Mother argues that the trial court erred in finding that mother's incarceration alone was sufficient to terminate her parental rights.

> While long-term incarceration does not, per se, authorize termination of parental rights . . . it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support a court's finding by clear and convincing evidence that the best interests of the children will be served by termination.

Ferguson, 14 Va. App. at 340, 417 S.E.2d at 5.

Contrary to mother's arguments, the trial court specifically stated:

> Let me indicate, first of all, Ms. Lindsey, that I don't believe that either this petition was filed or that the evidence shows that this petition to terminate your parental rights is based merely on the fact of your incarceration. The fact that somebody is in jail or in the Department of Corrections, as in your circumstance, standing in and of itself is not sufficient to terminate someone's parental rights.

The trial court based its decision on the fact that mother could not care for her child, or arrange for acceptable care for her child, within twelve months of the Department receiving custody. Therefore, the trial court's decision to terminate mother's parental rights was not based solely on her incarceration.

### CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.