COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Russell and Senior Judge Frank

MICHAEL SEAN ESKRIDGE

MEMORANDUM OPINION*

v.      Record No. 1676-14-3

PER CURIAM
MARCH 3, 2015

WASHINGTON COUNTY DEPARTMENT
 OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF WASHINGTON COUNTY
C. Randall Lowe, Judge

(Barry Lynn Proctor, on brief), for appellant.

(Edward G. Stout; Kimberly L. Mumpower, Guardian *ad litem* for
the infant child; Curcio & Stout, PC; HPS Legal Group, on brief), for
appellee.

UNPUBLISHED

Michael Sean Eskridge appeals the trial court's order terminating his parental rights to his

child pursuant to Code § 16.1-283(C)(1) and (2). Eskridge argues the trial court erred because the

evidence did not prove that he was responsible for the conditions leading to his child being placed

into foster care and that he was not provided any remedial services by the Washington County

Department of Social Services (DSS) while he was incarcerated.[1] Upon reviewing the record and

briefs of the parties, we conclude this appeal is without merit. Accordingly, we summarily affirm

the decision of the trial court. See Rule 5A:27.

---

\* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Eskridge also assigns error to the trial court's approval of a permanency plan of adoption
when DSS did not provide remedial services to him. "Our decision to affirm the termination order
necessarily subsumes [the circuit court's order approving adoption as the goal in the foster care
plan] aspect of his appeal because a preponderance-of-the-evidence standard governs judicial
modifications of foster care plans." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257,
265 n.3, 616 S.E.2d 765, 769 n.3 (2005).

The trial judge's findings, "'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support [them].'" Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991) (quoting Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988)). We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. Id.

So viewed, the evidence proved that B.E. was born on September 9, 2011, and, when he was six weeks old, DSS became involved with the family due to concerns about drug abuse and domestic violence. B.E. lived with his mother, maternal grandmother, and a half-brother.[2] On September 18, 2011, Eskridge was arrested for drug manufacturing and distribution. In December 2011, Eskridge was released on bond, but within twelve days, his bond was revoked based on his possession of illegal drugs. While Eskridge remained incarcerated, B.E.'s family continued to experience turmoil and DSS took custody of B.E. on December 5, 2012. Eskridge remained incarcerated in the regional jail until July 16, 2014. B.E.'s mother did not contest the termination of her parental rights to either B.E. or B.E.'s half-brother.

Ashley Tolliver, a family services specialist with DSS, testified that while Eskridge was incarcerated, he had no contact with B.E. after B.E. came into the care of DSS. Tolliver informed Eskridge how to make contact with her, and she sent a "relative form" to him. Eskridge returned the form, which provided names of family members for possible placement of B.E. Tolliver sent certified letters to the family members, but they did not respond. Tolliver testified that during the time Eskridge was incarcerated, he did not send any messages or cards to B.E. or have any contact with B.E.

---

[2] Eskridge is not the father of B.E.'s half-brother.

When B.E. came into the custody of DSS, he received early intervention services and made some improvements, but he remains behind both physically and developmentally. B.E. is attached to his foster family, who also has custody of B.E.'s half-brother. B.E.'s guardian *ad litem* testified that B.E. and his half-brother are very fragile children and both boys would "absolutely crumble" if they were separated.

Eskridge testified that, while incarcerated, his father or stepmother brought B.E. to the jail approximately seven times to visit and the last visit was in 2011, which was prior to DSS taking custody of B.E. Eskridge testified he wrote letters to B.E., which he sent to B.E.'s mother, and he wrote a letter to DSS regarding contact with B.E.[3] Eskridge testified that he had not taken any parenting or drug rehabilitation classes while incarcerated because they were not offered while the jail was being renovated.

At the time of the termination hearing, Eskridge recently had been released from incarceration and testified that he was living in a house owned by his father and would work part-time for his father.[4] Eskridge acknowledged that he did not pay child support for his two other older children.

Eskridge further acknowledged that he had been incarcerated for most of B.E.'s life, that B.E. would not recognize him, and that he agreed that it would be devastating to B.E. to separate him from his half-brother. Eskridge also confirmed the nature of his prior felony convictions, which included illegal drug distribution, weapon offenses, and misdemeanor convictions. Eskridge

---

[3] At the termination hearing, B.E.'s guardian *ad litem* stated that she never heard about the visits or letters until Eskridge's testimony, that the visits were not arranged by DSS, and that the letters to B.E. were not sent through DSS. According to DSS, Eskridge sent the letter to DSS on May 19, 2013.

[4] The termination hearing was held on July 9, 2014, while Eskridge remained incarcerated. However, because his release date was set for July 16, 2014, the trial judge continued the hearing to July 18, 2014, to provide Eskridge an opportunity to present evidence "as to future events."

conceded he had a guardian *ad litem* for the termination proceeding due to his incarceration and that he did not ask the guardian *ad litem* for help in setting up contact with B.E.

In terminating Eskridge's parental rights under Code § 16.1-283(C)(1) and (2), the trial judge acknowledged that Eskridge sent a letter to DSS on May 19, 2013, inquiring about B.E., but also noted that the letter did not request help from DSS or propose any plan for providing for B.E. upon Eskridge's release from incarceration in July 2014. The trial judge found that Eskridge admitted that he had not bonded with B.E., that B.E. would not recognize him, and that it would be devastating to B.E. and his half-brother to separate them. The trial judge also found that, shortly after B.E.'s birth, Eskridge was unable to provide for B.E. because of his drug use and arrests for felony offenses. The judge further found that, after Eskridge was released on bond, he continued to use drugs, resulting in his bond being revoked within twelve days. The trial judge stated that, while Eskridge was out on bond, he could have made arrangements for the care of B.E., but instead he used drugs and violated the terms of his bond, thereby knowingly subjecting himself to a longer period of incarceration. The trial judge did not find credible Eskridge's testimony that no parenting or drug rehabilitation classes were offered through the jail during the two-and-a-half years Eskridge was incarcerated. The trial judge stated Eskridge had a "tremendous criminal history," and he found that, despite previously receiving treatment at a diversion center, Eskridge continued to use drugs and commit criminal offenses. The trial judge concluded that Eskridge's past history demonstrated that he would not place the interests of B.E. above his own. The trial judge also found that B.E. was in a stable loving environment and that separating B.E. from his half-brother would be devastating to B.E..

Eskridge argues his criminal conviction standing alone was insufficient to terminate his rights and that DSS failed to provide appropriate services to him.

Pursuant to Code § 16.1-283(C)(1), a trial court may terminate the rights of a parent to a child upon clear and convincing evidence that the parent,

> without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent . . . and to strengthen the parent-child relationship. Proof that the parent . . . ha[s] failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition[.]

When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

We agree that Eskridge's incarceration, standing alone, is not sufficient to support the trial court's termination of his parental rights, but "it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support [the] court's finding that the best interests of the child will be served by termination." Ferguson v. Stafford Cnty. Dep't of Soc. Servs., 14 Va. App. 333, 340, 417 S.E.2d 1, 5 (1992). Moreover, Code § 16.1-283(C)(1) contains no excuse for a parent's failure to maintain continuing contact and to substantially plan for the future of the child.

This Court addressed whether services must be offered to an incarcerated parent in Harrison v. Tazewell Cnty. Dep't of Soc. Servs., 42 Va. App. 149, 590 S.E.2d 575 (2004). There, we stated, "as long as he was incarcerated, the Department would have had no avenue available to offer [the father] services aimed at assisting him in regaining custody of the child." Id. at 164, 590 S.E.2d at 583. "'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Ferguson, 14 Va. App. at 338, 417 S.E.2d at 4.

Notably, Eskridge was not incarcerated when B.E. was born. Instead of providing for his newborn child, Eskridge chose to use drugs, commit felony offenses, and was arrested as a result. While out on bond, instead of taking care of B.E. and making plans for B.E. in case of incarceration, Eskridge chose to continue using drugs and committing criminal offenses, and his bond was soon revoked. Although Eskridge returned a form to DSS providing the names of possible family members to care for B.E., he made no further contact with DSS until sending a letter in May 2013, which was more than six months after DSS took custody of B.E. In the letter, Eskridge did not request help from DSS or propose any plan for providing for B.E. upon his release from incarceration in July 2014. Eskridge also did not seek help from his guardian *ad litem*, who was appointed to assist Eskridge due to his incarceration. Eskridge made no attempts to contact B.E. through DSS or to write B.E. letters after DSS took custody of him. "'[P]ast actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold.'" Winfield v. Urquhart, 25 Va. App. 688, 695-96, 492 S.E.2d 464, 467 (1997) (quoting Linkous v. Kingery, 10 Va. App. 45, 46, 390 S.E.2d 188, 194 (1990)). Furthermore, "[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

There was sufficient evidence supporting the trial judge's decision that Eskridge failed to maintain contact or substantially plan for the future of B.E. for a period of six months after B.E. was placed in foster care and in terminating Eskridge's parental rights under Code § 16.1-283(C)(1).

Because we conclude the trial court's termination of Eskridge's parental rights was warranted under Code § 16.1-283(C)(1), we need not decide if the termination also was warranted under Code § 16.1-283(C)(2). When a trial court's judgment is made on alternative

grounds, we need consider only whether any one of the alternatives is sufficient to sustain the judgment of the trial court and, if we so find, need not address the other grounds. <u>See</u> <u>Fields v. Dinwiddie Cnty. Dep't of Soc. Servs.</u>, 46 Va. App. 1, 8, 614 S.E.2d 656, 659 (2005) (termination of parental rights upheld under one subsection of Code § 16.1-283 forecloses need to consider termination under alternative subsections). Thus, we need not address Eskridge's contention that no evidence proved that he was responsible for the conditions leading to the child's removal, a requirement only under Code § 16.1-283(C)(2).

For the reasons stated above, we summarily affirm the decision terminating Eskridge's parental rights. <u>See</u> Rule 5A:27.

<u>Affirmed.</u>