COURT OF APPEALS OF VIRGINIA

Present: Judges Alston, Chafin and Senior Judge Haley

CECIL MOORE

v.      Record No. 0756-15-3

LEE COUNTY DEPARTMENT OF SOCIAL SERVICES

MEMORANDUM OPINION[*]
PER CURIAM
NOVEMBER 10, 2015

FROM THE CIRCUIT COURT OF LEE COUNTY
Tammy S. McElyea, Judge

(Lisa Ann McConnell, on brief), for appellant. Appellant
submitting on brief.

(Gregory D. Edwards; C. M. Callahan, Guardian *ad litem* for the
minor children, on brief), for appellee. Appellee and Guardian *ad
litem* submitting on brief.

Cecil Moore (father) appeals the orders terminating his parental rights to his two minor

daughters. Father argues that the trial court erred in granting the petitions to terminate father's

parental rights, which were filed by Lee County Department of Social Services (the Department),

because (1) the "Department's decision to deviate from its own policy and accelerate the foster care

time line to petition for termination of [father's] residual parental rights was based solely upon

[father's] being incarcerated and after the children's mother having unilaterally agreed to execute an

entrustment agreement;" (2) the "Department failed to offer services to [father], to investigate if any

services were available to [father] or to communicate with [father] what services would need to be

completed by [him] in order for [him] to be reunited with his children as required by statute;" and

(3) the "trial court's failure to reconsider its decision to terminate [father's] residual parental rights

in light of a subsequent reduction in sentence and before a final hearing on [father's] petition for

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

compassionate release pending before the federal court was arbitrary and prejudicial to [his] parental rights." Upon reviewing the record and briefs of the parties, we conclude that the trial court did not err. Accordingly, we affirm the decision of the trial court.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

So viewed, the evidence proved that father has two daughters, who were born in 2007 and 2009. The Department first became involved with the family in 2010. At that time, the children were living with father and there was a drug raid at the home. Father was arrested and convicted of several charges. He was sentenced to prison in the federal system.[1] The children briefly entered foster care, and then the children's paternal grandfather obtained custody of the children. Although the paternal grandfather had custody of both children, one child was living with a paternal aunt in May 2014.

On May 9, 2014, the Department received a telephone call from a local hospital because the medical staff suspected that one of the children had been sexually abused. Due to the injuries and allegations, the Department obtained an emergency removal order for both children. When the children came into the Department's care, they had "extreme" lice and dirty clothes. One of the children had sores from MRSA that had not been treated. Both children had developmental delays, and one child had a speech impediment.

---

[1] At the time of the circuit court hearing, father's expected release date was August 12, 2018.

The Department sent letters and copies of the service plans to father in prison to advise him of the children's situation. Father did not respond to the Department's correspondence.[2] The social worker also tried to contact his case manager in prison, but was never able to speak with the case manager.

While in prison, father completed several drug abuse programs, two parenting classes, and an inmate skills development plan. Father told the social worker that when he was released from prison, he anticipated living with his family. He testified that he would live in one of the rental properties owned by the children's paternal grandfather.

The social worker testified that the children have "blossomed" in foster care. The children received counseling, and one of the children participated in speech therapy and occupational therapy.

The children's mother, Rosa Lee Moore, decided that she was unable to take care of the children and told the Department that she was willing to sign an entrustment agreement. In December 2014, the Department filed petitions to terminate father's parental rights.

On January 27, 2015, the Lee County Juvenile and Domestic Relations District Court terminated father's parental rights to his two daughters. Father appealed to the circuit court. On April 6, 2015, the parties appeared before the circuit court to present their evidence and argument. The circuit court entered an order terminating father's parental rights to both children pursuant to Code § 16.1-283(B).

Father subsequently filed a motion to reconsider because the federal court reduced his sentence by twenty months. He asked the trial court to set aside the April 6, 2015 order and direct the Department to file a new foster care plan with a goal of return home. On April 24, 2015, the

---

[2] Father testified that he did not receive all of the Department's correspondence because he was being transferred within the prison system.

trial court heard arguments on father's motion. Counsel informed the trial court that father's expected release date would be late 2016 or early 2017. The trial court noted that father's release date was still more than a year away, and it denied the motion to reconsider. This appeal followed.

ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citation omitted). When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

*Assignment of error #1*

Father argues that the trial court erred in terminating his parental rights because the Department's decision to petition for termination of parental rights earlier than normal was "based solely" on father's incarceration. On cross-examination, the social worker admitted that "the children would normally be in the department's care for a year or more before [it] would consider adoption." However, in this case, the Department filed the petitions to terminate parental rights after the children had been in foster care for approximately eight months.

Contrary to father's arguments, the Department's decision to file petitions to terminate parental rights was not based "solely" on father's imprisonment. There was evidence that father had limited contact with the children prior to his incarceration. When he was arrested in January 2010, the oldest child was approximately two and a half years old, and the youngest child was only six months old. He admitted that he had not built a relationship with his youngest child. As a result of his arrest, father has a founded Level One complaint of child abuse and neglect. Although the Department had sent correspondence to father about the foster care process, he did not respond.

- 4 -

> While long-term incarceration does not, per se, authorize termination of parental rights . . . it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support a court's finding by clear and convincing evidence that the best interests of the children will be served by termination.

Ferguson v. Stafford Cnty. Dep't of Soc. Servs., 14 Va. App. 333, 340, 417 S.E.2d 1, 5 (1992).

The evidence proved that the Department considered more than father's imprisonment when it decided to file the petitions to terminate father's parental rights. It also considered the children's situation prior to the removal. The children came into the Department's care because there were allegations of sexual abuse. They also were dirty and developmentally delayed. Despite the evidence regarding the children's condition, father proposed that the children be returned to the paternal grandfather to await father's release from prison. The trial court was concerned that father suggested placing the children back in the environment from which they were removed. The trial court did not err in terminating father's parental rights.

*Assignment of error #2*

Father argues that the trial court erred in terminating his parental rights because the Department did not provide him with services or notify him of available services while he was incarcerated.

This Court addressed a similar argument in Harrison v. Tazewell County Dep't of Soc. Servs., 42 Va. App. 149, 590 S.E.2d 575 (2004), and we stated:

> [W]e find no merit in [father's] contention on appeal that Code § 16.1-283(C)(2) required the Department to offer him services during his incarceration. It would be patently unreasonable to require the Department, under such circumstances, to continue to offer services. . . . Thus as long as he was incarcerated, the Department would have had no avenue available to offer [father] services aimed at assisting him in regaining custody of the child.

Id. at 163-64, 590 S.E.2d at 583.

Likewise, Code § 16.1-283(B) does not require the Department to provide services to father during his incarceration. Even though the Department was not required to provide services to father, it still kept him informed of the situation. The social worker testified that she sent father letters to update him on the children and the foster care process. She explained that the Department would not offer services to him while he was incarcerated; however, she normally calls the case manager to discuss what services are available to the parent while he is in prison. The social worker left messages for father's case manager, but no one called her back. In addition, the social worker provided father's address to the clerk's office so that he would receive copies of the foster care plan.

Accordingly, the trial court did not err in terminating father's parental rights because the Department was not required to provide him services while he was incarcerated.

### Assignment of error #3

Father argues that the trial court abused its discretion in not reconsidering its decision to terminate his parental rights after he informed the court that his prison sentence was reduced by twenty months.

During the termination of parental rights hearing, the trial court learned that father's anticipated release date was August 12, 2018. He testified that he was asking the federal court to reconsider his sentence in light of amended sentencing guidelines and to consider compassionate release.[3] After the termination of parental rights hearing, the federal court reduced father's sentence by twenty months based on the amended guidelines.

Father then filed a motion with the trial court in this case and asked the court to reconsider the decision to terminate his parental rights because of the reduction in his prison sentence. Counsel

---

[3] The record does not indicate whether the federal court ruled on father's request for compassionate release.

informed the trial court that father anticipated being released in late 2016 or early 2017. The trial court denied the motion to reconsider because father's release date was more than a year away.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

The trial court considered father's reduction in prison time. However, if father were released in late 2016 or early 2017, the children would have been in foster care for two to three years. As noted during the trial, father would still need to complete services after he was released from prison, so he would not be in a position to take the children when he was released. Father testified that he would rely on the paternal grandfather for assistance when he was released, and the trial court was concerned that the children would be placed back in the environment from which they were removed.

Considering the totality of the record, the trial court did not err in terminating father's parental rights.

CONCLUSION

For the foregoing reasons, the trial court's ruling is affirmed.

Affirmed.