UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Decker, Malveaux and Senior Judge Annunziata

ALFONSO RENOID MASON

MEMORANDUM OPINION*

v.      Record No. 0149-17-3      PER CURIAM
                                   JULY 25, 2017

HARRISONBURG-ROCKINGHAM
 SOCIAL SERVICES DISTRICT

FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Thomas J. Wilson, IV, Judge

(Derrick W. Whetzel; GravesWhetzel Law, PLLC, on brief), for
appellant. Appellant submitting on brief.

(Rachel Errett Figura, Assistant County Attorney; Hallet M.
Culbreth, Guardian *ad litem* for minor child, on brief), for appellee.
Appellee and Guardian *ad litem* submitting on brief.

Alfonso Renoid Mason (father) appeals the order terminating his parental rights to his child.

Father argues that the trial court erred in terminating his parental rights pursuant to Code

§ 16.1-283(C)(2) because father "was precluded from seeking rehabilitation and was making

progress toward rehabilitation at the time of his incarceration." Upon reviewing the record and

briefs of the parties, we conclude that the trial court did not err. Accordingly, we affirm the decision

of the trial court.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cty. Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Father and Felicia Elizabeth Feaster (mother) are the biological parents of C.M., born June 2015.[1] Prior to C.M.'s birth, the Department met with the parents to discuss services and expectations. At the time of C.M.'s birth, the parents were residing at Mercy House, but were evicted on September 12, 2015 after a loud verbal altercation.

Both parents have a history of substance abuse. After the child's birth, both tested positive for cocaine and admitted using marijuana.

On November 4, 2015, the Harrisonburg-Rockingham Juvenile and Domestic Relations District Court (the JDR court) adjudicated that C.M. was abused and neglected. On the same date, the JDR court entered a child protective order and ordered mother to cooperate with services for individual counseling, substance abuse, and other recommended services. The JDR court also ordered that the parents should refrain from domestic violence and drug use and cooperate with random drug screens. The JDR court also ordered the parents to cooperate with the Department and inform the Department of the child's residence.

After leaving Mercy House, the parents stayed with friends for short periods of time. In December 2015, they obtained new housing. On January 6, 2016, the Department made an unannounced home visit. The social worker smelled marijuana and asked the parents to take a drug test. Mother's drug test was positive for marijuana, cocaine, and opiates. Father did not take the drug test. The Department also learned that father had been selling heroin.

On January 13, 2016, the Department removed the child from the parents' home. On February 3, 2016, the JDR court again adjudicated the child as abused and neglected.

The Department provided numerous services to the parents. The Department arranged for visits with the child. The parents missed several appointments and did not always provide

---

[1] Mother is the biological mother to two other children, J.F. and H.M. Her parental rights were terminated to both children. Father is not the biological father of J.F. or H.M.

advance notice to the social worker when they would have to miss their scheduled visits. However, they acted appropriately with their child during the visits. Both parents completed a parenting class. Mother and father refused to be tested for drugs on five occasions, and mother requested not to be tested at one time because she knew she would not test clean. The Department offered to help mother enter an inpatient substance abuse rehabilitation program, but she told the social worker that she "didn't have the time to go to an inpatient." The Department encouraged father to get substance abuse counseling, but he said that he had been to substance abuse classes and could get sober on his own.

On November 7, 2016, father pled guilty to and was convicted of four felonies, including eluding police, two counts of distribution of heroin, and pretrial violation. The circuit court sentenced him to a total of sixteen years and six months in prison, with fifteen years suspended. Upon his release, father will be subject to three years of supervised probation.

From January until September 2016, mother was unemployed. Prior to father's incarceration, the Department offered job assistance for father. Father applied for thirty-two jobs. He had five interviews and was offered jobs at Marshall's and Wal-Mart. Initially, he worked at Marshall's, but quit after three weeks to work at Wal-Mart because of transportation issues. Father was employed at Wal-Mart until March 2016, when he quit that job because the Department of Child Support Enforcement was garnishing his wages. Father then did some landscaping work on the side.

While the child was in foster care, the parents did not obtain and maintain stable housing. As noted above, they were evicted from Mercy House in 2015. Landlords from two apartments evicted them in 2016. Afterwards, the parents lived with friends or at motels. Since father's incarceration, mother has stayed with friends and has no permanent housing.

The Department investigated other relatives to see if they would consider being a placement option for C.M., but to no avail. The evidence proved that the child was doing well in foster care. C.M. was placed in the same foster home as her half-brother.

On September 26, 2016, the Department filed petitions to terminate the parents' parental rights to C.M. On October 19, 2016, the JDR court entered orders terminating the parents' parental rights and approving the goal of adoption for C.M.

Both parents appealed to the circuit court. On January 10, 2017, the circuit court heard evidence and argument. Father testified that since he has been incarcerated, he has gone to Alcoholics Anonymous and Narcotics Anonymous meetings. He also called during mother's visits with the child, so he could talk to the child.

On January 11, 2017, the circuit court issued its ruling from the bench. The circuit court terminated mother's parental rights pursuant to Code § 16.1-283(C)(2) and (E)(i) and father's parental rights pursuant to Code § 16.1-283(C)(2). This appeal followed.[2]

## ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citation omitted). When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

Father argues that the trial court erred in terminating his parental rights pursuant to Code § 16.1-283(C)(2) because he "was precluded from seeking rehabilitation and was making

---

[2] Mother also appealed the circuit court's order terminating her parental rights. See Feaster v. Harrisonburg-Rockingham Soc. Servs. Dist., Record No. 0135-17-3.

- 4 -

progress toward rehabilitation at the time of his incarceration." Father emphasizes that he was "intermittently dealing with both his criminal issues and the rehabilitative process concerning his child" approximately three months after the child was placed in foster care. He asserts that the Department did not provide him services while he was incarcerated. He contends he should be given the opportunity to address his issues and rehabilitate himself prior to the court terminating his parental rights.

The circuit court terminated father's parental rights pursuant to Code § 16.1-283(C)(2), which states that a court may terminate parental rights if

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Contrary to father's arguments, the Department provided numerous services to father. The Department offered him parenting classes, which he completed. The Department helped the parents secure a placement for housing at Mercy House, but they were subsequently evicted. The circuit court found that "extensive assistance [was] provided to the father in attempting to help him find work." The circuit court noted, however, that father "was willing to work, but he just wouldn't take advantage of what was being offered." The circuit court noted that father quit his job at Wal-Mart, "a good job" according to the circuit court, and started doing "landscaping work on the side and selling heroin which [led] to the new felony convictions." The Department offered substance abuse counseling and treatment to father, but he declined the services and never went to the Community Services Board for an intake. The evidence proved that father did not take advantage of the services offered to him prior to his incarceration.

After he was incarcerated, the Department continued to keep him informed about the child in foster care. The evidence proved that the child was doing well in foster care. Father was able to call and speak to the child while mother visited with C.M. The social worker admitted that not all services were available to father at the jail or in prison. However, the social worker testified that the Community Services Board comes to the local jail and offers some services.

> [W]e find no merit in [father's] contention on appeal that Code § 16.1-283(C)(2) required the Department to offer him services during his incarceration. It would be patently unreasonable to require the Department, under such circumstances, to continue to offer services. . . . Thus as long as he was incarcerated, the Department would have had no avenue available to offer [father] services aimed at assisting him in regaining custody of the child.

Harrison v. Tazewell Cty. Dep't of Soc. Servs., 42 Va. App. 149, 163-64, 590 S.E.2d 575, 583 (2004).

> While long-term incarceration does not, per se, authorize termination of parental rights . . . it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support a court's finding by clear and convincing evidence that the best interests of the children will be served by termination.

Ferguson v. Stafford Cty. Dep't of Soc. Servs., 14 Va. App. 333, 340, 417 S.E.2d 1, 5 (1992).

At the time of the termination hearing, father was not able to care for the child, and there was no indication of when, or if, father would be able to care for the child. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Considering the totality of the circumstances, the circuit court did not err in terminating father's parental rights pursuant to Code § 16.1-283(C)(2) and finding that termination was in the child's best interests.

## CONCLUSION

For the foregoing reasons, the trial court's ruling is affirmed.

<u>Affirmed.</u>