# COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Decker and O'Brien
Argued at Richmond, Virginia

DANIEL THORNSBURY

v.      Record No. 2035-16-2

CHESTERFIELD-COLONIAL HEIGHTS
 DEPARTMENT OF SOCIAL SERVICES

MEMORANDUM OPINION* BY
JUDGE MARY GRACE O'BRIEN
AUGUST 15, 2017

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Frederick G. Rockwell, III, Judge

Todd M. Ritter (Daniels, Williams, Tuck & Ritter, on brief), for
appellant.

Emily C. Russell, Assistant County Attorney; Lisa Way Piper,
Guardian *ad litem* for the infant children (Jeffrey L. Mincks, County
Attorney, on brief), for appellee.

Daniel Thornsbury ("appellant"), the father of two children, appeals the termination of his

residual parental rights under Code § 16.1-283.  He asserts two assignments of error:

1.  The trial court committed reversible error by terminating the
    Appellant's residual parental rights when clear and convincing
    evidence was not presented to prove it was in the best interests of
    the children to terminate Appellant's residual parental rights.

2.  The trial court committed reversible error by terminating
    Appellant's residual parental rights when clear and convincing
    evidence was not presented to prove he had, without good cause,
    been unwilling or unable within a reasonable period of time, not
    to exceed twelve (12) months from the date the children were
    placed in foster care, to substantially remedy the conditions which
    led to the children's placement in foster care.

Finding no error, we affirm.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

We view the evidence in the light most favorable to the party prevailing at trial, the Chesterfield-Colonial Heights Department of Social Services ("the Department"). Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767 (2005). Appellant was the sole custodian of his two daughters, E.T., born August 4, 2004, and J.T., born May 4, 2006.[1] Between April 2012 and October 2014, Richmond Child Protective Services ("RCPS") received three complaints alleging that appellant had abused and neglected the children due to his alcohol and substance abuse. RCPS conducted a family assessment and implemented a safety plan; however, the agency closed the case when appellant and his children moved to Chesterfield County.

On October 2, 2015, the Department received a referral from Chesterfield County Child Protective Services ("CPS") concerning appellant's care of his daughters. The referral alleged that appellant, while intoxicated, grabbed J.T.'s shirt and spanked her after she tried to take his beer away. The caller also reported that the children did not have sufficient food or weather-appropriate clothing. On October 9, 2015, the Department received another CPS referral that appellant, who was again intoxicated, took the girls to a residence where he had them sleep on a "smelly, dirty couch" while he "smok[ed] something out of a glass pipe." On October 12, 2015, RCPS received a report that appellant's mother's paramour, with whom she resided, had sexually abused E.T. and attempted to sexually assault J.T.

A Chesterfield County detective and a CPS family services specialist interviewed appellant at his home on October 21, 2015. They observed a hole in the roof where a tree had fallen, and also noted that appellant appeared to be under the influence of alcohol. Appellant acknowledged drinking a twelve-pack of beer on each of his two days off per week, and he admitted to smoking

---

[1] The children's mother pled guilty to child endangerment in November 2011, and agreed not to have contact with children under the age of eighteen as a condition of her parole.

marijuana the night that the girls slept on the couch. He also said that he had used cocaine within the preceding two days. Appellant admitted that he brought his daughters back to his mother's house despite the pending sexual assault investigation of her paramour because he did not have another babysitter for them.

Appellant agreed to enter into a safety plan with the Department requiring him to abstain from drugs and alcohol in the presence of his children, vacate the residence, and leave the children in the physical custody of his roommate. Appellant subsequently failed to bring his daughters to a forensic interview concerning the sexual assault complaint, and the Department was unable to contact him. As a result of concerns about the girls' safety, the Department assumed emergency custody of E.T. and J.T. on October 23, 2015.

On December 18, 2015, the Chesterfield Juvenile and Domestic Relations District Court ("JDR court") approved an initial foster care plan with the goal of returning the children to their father. The primary focus of the plan was for appellant to cease his use of alcohol and illicit substances. The JDR court included a provision that "[appellant] shall not consume any alcohol or illegal substance during the pendency of this plan." The Department agreed to assist appellant in obtaining substance abuse treatment. Additionally, appellant was required to comply with other conditions such as maintaining employment and not allowing his mother's paramour to have any contact with the children.

Although appellant initially complied with some of the plan's conditions by maintaining employment and completing a psychological evaluation, he failed to abstain from drugs and alcohol. During his psychological interview, he stated that he did not believe his children had been affected by his drug and alcohol use. He also indicated in the interview that he believed his daughter fabricated the sexual abuse allegations against his mother's paramour.[2] In March 2016,

_____

[2] RCPS later determined that the complaint was "founded."

appellant completed the intake form for a substance abuse treatment program but did not return for further services. He tested positive for cocaine or marijuana approximately ten times between December 2015 and July 2016. He refused or missed approximately fifteen screens between March and August 2016. During the pendency of the foster care plan, appellant returned fewer than five clean screens.

In September 2016, the Department changed the goal of the foster care plan to adoption and filed a petition to terminate appellant's parental rights. The Department asserted that due to appellant's continuing substance abuse issues, it was not in the children's best interests to return to his care. Following a hearing, the JDR court approved the foster care plan and terminated appellant's parental rights.

Appellant appealed, and the circuit court conducted a *de novo* hearing on November 10, 2016. At that hearing, the Department's social worker testified that visits between appellant and the children "went well overall and that [appellant] was receptive to parenting instruction." However, the social worker also stated that appellant failed most of his drug tests, and his lack of transportation made it difficult for him to receive substance abuse treatments, despite the Department's offer to transport him to all counseling and therapy sessions. Additionally, appellant missed a team decision-making meeting and a permanency planning hearing.

Appellant testified that he attended four substance abuse classes but stopped because the classes conflicted with his work schedule. He told the court that he was unable to enroll in another drug treatment program because he did not bring the proper documentation. He also acknowledged that he had returned positive screens for narcotics; however, he asserted that he was currently not using drugs. At that point, the court directed appellant to submit to a urine screen. The results were inconclusive.

Appellant described his living situation.  He was residing in a studio apartment located above his place of employment.  He advised that he built a partition in the apartment to create a separate bedroom for his daughters.  Because appellant works until two a.m., he planned to ask his sister to bring his sixteen-year-old niece to babysit his daughters while he was working.  He did not contest that while the children have been in foster care, J.T. has continued to do well in school and E.T.'s grades have improved.

At the conclusion of the hearing, appellant requested that the court grant him three more months to comply with the foster care plan.  He argued that his mother's death in August 2016, ten months after his daughters were placed in foster care, was an "extraordinary circumstance" that warranted granting him additional time.  The court denied appellant's request and entered final orders terminating his parental rights with respect to each child.

## ANALYSIS

When reviewing the termination of residual parental rights, this Court presumes the trial court "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005) (quoting Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990)).  The court has "broad discretion in making the decisions necessary to guard and to foster a child's best interests," and its decision will not be reversed "unless plainly wrong or without evidence to support it." Farley, 9 Va. App. at 328, 387 S.E.2d at 795.

### A.  Assignment of Error One

Appellant contends that the Department failed to prove that terminating his parental rights was in his daughters' best interests.  Code § 16.1-283(C) provides:

> The residual parental rights of a parent or parents of a child placed in
> foster care as a result of court commitment . . . may be terminated if

the court finds, based upon clear and convincing evidence, that it is in the best interests of the child.

A court must consider several factors when determining a child's best interests, such as

the age and physical and mental condition of the child or children; the age and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the child or children; the role which each parent has played, and will play in the future, in the upbringing and care of the child or children; and such other factors as are necessary.

Harrison v. Tazewell Cty. Dep't of Soc. Servs., 42 Va. App. 149, 161, 590 S.E.2d 575, 581-82 (2004) (quoting Barkey v. Commonwealth, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986)).

Here, appellant's substance abuse issues prevented him from effectively parenting his children. The initial RCPS referral resulted from complaints concerning appellant's behavior around his daughters while he was under the influence of drugs and alcohol. Despite express prohibitions in the foster care plan, appellant continued to consume alcohol and illegal substances. He did not complete drug treatment and regularly tested positive for cocaine and marijuana.

Further, appellant did not cooperate with the investigation into the alleged sexual abuse of the children. Because he believed that the allegations were false, appellant allowed contact between the children and the alleged perpetrator until the Department told appellant not to bring the children to his mother's home again. He also ignored the RCPS request to interview the children.

Appellant conceded that both girls were doing well in their foster care placement. They were well-adjusted and on-track academically. Considering all the evidence, the court did not err by finding that clear and convincing evidence established that termination of appellant's parental rights was in the best interests of the children.

## B. Assignment of Error Two

Appellant contends the court erred by finding that he was unable to remedy the conditions that led to his daughters' foster care placement and that termination was appropriate under Code

§ 16.1-283(C)(2). He argues that he corrected some of the conditions, and therefore he should have been afforded more time to comply with the foster care plan before his rights were terminated.

Code § 16.1-283(C)(2) provides for termination of parental rights if

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end. Proof that the parent or parents, without good cause, have failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court . . . shall constitute prima facie evidence of this condition.

Appellant acknowledges that he failed to comply with the alcohol and substance abuse components of the foster care plan. However, he argues that the court should have granted him additional time to address these issues because his mother's death was an "extraordinary circumstance" that prevented him from abstaining from drugs and alcohol and completing substance abuse treatment. He asserts that if he were given "another three months," he would have been able to remedy these conditions which required his daughters' placement into foster care.

We have held that "past actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold." Linkous v. Kingery, 10 Va. App. 45, 56, 390 S.E.2d 188, 194 (1990) (quoting Frye v. Spotte, 4 Va. App. 530, 536, 359 S.E.2d 315, 319 (1987)). Nothing in the record supports appellant's contention that he could successfully remedy his alcohol and drug addiction in three months. The children entered foster care in October 2015. When his mother died on August 20, 2016, appellant had already failed approximately ten drug tests and refused as many as fifteen others. Additionally, despite the Department's offer of assistance with transportation, he failed to continue attending drug treatment.

"It is clearly not in the best interests of [the children] to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). At the time the court entered the order terminating appellant's residual parental rights, the children had been in foster care for thirteen months. Although appellant had maintained gainful employment and found stable housing, his substance abuse, which remained unabated, significantly limited his ability to care for his daughters. We find no error in the court's determination that appellant had not substantially remedied the conditions that brought his daughters into foster care, and accordingly, the court properly terminated appellant's residual parental rights.

Affirmed.