COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff, Ortiz and Friedman
Argued by videoconference

OLIVER J. WADE

                                                          MEMORANDUM OPINION* BY
v.        Record No. 0005-21-1                       JUDGE DANIEL E. ORTIZ
                                                          NOVEMBER 23, 2021

CITY OF HAMPTON
  DEPARTMENT OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Michael A. Gaten, Judge

Romeo G. Lumaban (Smith Law Firm, PLC, on brief), for appellant.

L. Olivia Wiggins (Cheran Cordell Ivery; Tier L.T. Burks, Guardian
*ad litem* for the minor children; Hampton City Attorney's Office;
Burks Law Firm, PLC, on brief), for appellee.


        Oliver Wade ("father") appeals the termination of his parental rights with respect to his

twins ("twins") by the Circuit Court of the City of Hampton ("circuit court").  On appeal, he

argues the circuit court erred in terminating his parental rights under Code § 16.1-283(C)(2)

because the City of Hampton Department of Social Services ("DSS") failed to satisfy the

statutory criteria by clear and convincing evidence.  As the record contains substantial evidence

to support the circuit court's termination of the father's parental rights, we affirm the circuit

court's decision.

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

In early 2019, DSS petitioned to remove the then five-year-old twins from the father and their mother, Amanda Wade ("mother"). DSS based its petition on reports of sexual abuse, physical abuse, and physical neglect inflicted on the twins while they were in their parents' custody. As part of the physical abuse and neglect, the twins were padlocked in a bedroom so long they defecated and urinated on themselves and the floor. Both parents hit the twins with a switch on their backs, butts, and possibly one of the twins' head. Additionally, law enforcement arrested the father on January 11, 2019, for the alleged sexual abuse of the twins' older half-sister, the father's stepdaughter. During a forensic interview, the twins disclosed their eldest half-brother sexually assaulted them while they were in their parents' care.

Over fifteen months after DSS placed the twins in foster care, the Hampton Juvenile and Domestic Relations District Court ("JDR court") approved foster care plans with the goal of adoption and terminated the parental rights of both parents. Both parents appealed the approval of the foster care plans and the parental rights terminations to the circuit court. The circuit court heard the appeals on December 15, 2020.

In its case in chief, DSS called Jennifer Parker ("Parker"), the senior social worker assigned to the twins' case. Parker testified during her direct and cross-examinations about the physical abuse and neglect the twins experienced, all of which was outlined in DSS's report. Parker also explained she mostly worked with the mother and that the father did not complete any of the services because he had been incarcerated while awaiting trial for the alleged sexual

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issue the father has raised. Evidence and factual findings below that are necessary to address the assignment of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

abuse of his stepdaughter. According to the DSS report, although the father had been released on bond on February 8, 2020, DSS struggled to locate him. Parker acknowledged on cross-examination that the father's sexual abuse charge was still pending, and he was prohibited from contacting the twins by his bond conditions.

The circuit court entered orders terminating the father's parental rights to the twins and approving the goal of adoption on December 15, 2020. This appeal followed.

ANALYSIS

A. Standard of Review

"In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." Farley v. Farley, 9 Va. App. 326, 328 (1990). When reviewing a trial court's decision to terminate parental rights, we presume a trial court "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Fields v. Dinwiddie Cnty. Dep't of Soc. Servs., 46 Va. App. 1, 7 (2005) (quoting Farley, 9 Va. App. at 329). We will not disturb a trial court's judgment based on evidence heard *ore tenus* "unless plainly wrong or without evidence to support it." Id. (quoting Logan v. Fairfax Cnty. Dep't of Hum. Dev., 13 Va. App. 123, 128 (1991)). Though a trial court fails to explain its reasons for its decision, we will affirm the court's determination if it "was made with the child's welfare as paramount, and it is clear that the decision is in the child's best interests." Farley, 9 Va. App. at 329.

B. The Circuit Court Did Not Err in Terminating the Father's Parental Rights

Under Code § 16.1-283(C)(2), a court may terminate a parent's residual rights if the court finds by clear and convincing evidence (1) the termination is in the child's best interests and

- 3 -

(2) the parent was unwilling or unable to substantially remedy the conditions that led to the child's placement in foster care.

In analyzing the first prong, the circuit court must consider:

> the age and physical and mental condition of the child; the age and physical and mental condition of the parent; the relationship existing between the parent and the child; the needs of the child; the role the parent has played, and will play in the future, in the upbringing and care of the child; and any other such factors that are necessary.

Thach v. Arlington Cnty. Dep't of Hum. Servs., 63 Va. App. 157, 169 (2014). If the court determines by clear and convincing evidence that termination is in the child's best interests, the circuit court then moves to the second prong. Id. at 170.

Under the second prong, the court must find clear and convincing evidence that

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2); see also Thach, 63 Va. App. at 170. However, whether a local social services department ("department") made "reasonable and appropriate" efforts to provide services to a parent depends on "the circumstances of a particular case." Harrison v. Tazewell Cnty. Dep't of Soc. Servs., 42 Va. App. 149, 163 (2004) (quoting Ferguson v. Stafford Cnty. Dep't of Soc. Servs., 14 Va. App. 333, 338 (1992)). When a parent is incarcerated, the department has no obligation to offer services to an incarcerated parent. Id. at 163-64. In fact, we have determined "[i]t would be patently unreasonable to require the [d]epartment, under such circumstances, to continue to offer services." Id.

After reviewing Code § 16.1-283(C)(2), the relevant case law, and the record, we conclude the circuit court did not abuse its discretion in finding that termination was in the best

interests of the twins, and the father failed to substantially remedy the conditions that led to the twins' foster care placement, despite DSS's reasonable and appropriate efforts.

In the present case, the circuit court found by clear and convincing evidence the termination of the father's parental rights was in the twins' best interests. While the circuit court did not expressly address the twins' best interests with regard to the father in its ruling, the final order stated "it [was] in the [twins'] best interests that the residual parental rights of [the father] be terminated." Moreover, we presume the circuit court thoroughly weighed all the evidence. As evidence, Parker testified about the physical neglect and abuse and sexual abuse the twins suffered. Additionally, Parker stated the father was incarcerated, awaiting trial for sexual abuse charges. Further, per the request of the mother's counsel, the circuit court admitted into evidence the DSS foster care plans which detailed that the twins were padlocked in a bedroom for so long they defecated and urinated on themselves and the floor. The report also explained the father hit the twins with a switch. As a result, the record contained clear and convincing evidence for the circuit court to conclude the termination was in the twins' best interests.

Likewise, the circuit court did not err in finding the father, without good cause, was unwilling or unable to remedy substantially the conditions which led to foster care placement. [2] The father contends he could not have remedied the situation because DSS made no reasonable efforts to provide services to him. [3] Yet, because of the father's incarceration, DSS need not and did not provide him services.

---

[2] Throughout his opening brief and oral argument discussing the twins' best interests, the father repeatedly pointed to the mother's efforts to comply with DSS's recommendations. Yet, we will not impute the other parent's participation in DSS services to the appealing parent. Instead, we focus on the circuit court's determination of what steps the appealing parent took to remedy the conditions that led to foster care placement.

[3] The father admits that he was incarcerated for allegedly sexually abusing his stepdaughter, which partly prompted the twins' removal, but essentially argues the circuit court cannot hold that incarceration against him in determining whether he remedied the conditions

Moreover, although the father was released on bond on February 8, 2020, the April 2020 DSS reports noted that DSS did not know the father's whereabouts. The evidence in the record does not disclose whether DSS ever located the father before the JDR court trial. Additionally, the father provided no evidence that he reached out to DSS or attempted to remedy the conditions that prompted the twins' removal once he was released on bond. The father argues that he could not contact the twins because of his bond conditions; however, he could have contacted DSS.

Furthermore, the record reveals the father failed to make any effort to remedy the conditions that led to foster care placement in the almost two years that passed between removal and the final termination hearing. Most of the time the twins were in foster care, the father was incarcerated, awaiting trial for sexually assaulting the twins' half-sister. However, even when released, the father made no apparent effort to remedy the conditions that led to the twins suffering sexual abuse and physical abuse and neglect while in their parents' custody.

When viewed in the light most favorable to DSS, the record supports by clear and convincing evidence the circuit court's findings that (1) termination was in the twins' best interests, and (2) the father, without good cause, was unwilling or unable within a reasonable period to remedy substantially the conditions which led to the twins' foster care placement.

CONCLUSION

Since the record supports the circuit court's decision that DSS satisfied the statutory criteria under Code § 16.1-283(C)(2) by clear and convincing evidence, we affirm the circuit court's order terminating the father's parental rights.

<u>Affirmed.</u>

---

that led to removal. However, his argument attempts to box DSS into an impossible situation while he avoids responsibility for his actions.