COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Chief Judge Decker, Judge Chaney and Senior Judge Humphreys
Argued by videoconference


ANGELA BLALOCK, ET AL.

MEMORANDUM OPINION* BY
v.        Record No. 2054-23-2                JUDGE VERNIDA R. CHANEY
NOVEMBER 19, 2024

CHESTERFIELD-COLONIAL HEIGHTS
  DEPARTMENT OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF COLONIAL HEIGHTS
Steven B. Novey, Judge

Kevin Purnell; Jean M. McKeen (Kevin D. Purnell, PLLC;
McKeenLaw, PLLC, on brief), for appellants.

Emily C.R. Bittner (J. Kristen Thornbrugh, Guardian ad litem for the
minor children; County Attorney's Office, Chesterfield County;
Thornbrugh Law Firm, PLC, on brief), for appellee.


Angela (mother) and Gerald (father) Blalock appeal the circuit court's orders terminating

their parental rights under Code § 16.1-283(C)(2).[1]  The parents argue that the circuit court erred in

finding that they failed to remedy the conditions that led to the children's foster care placement

within a reasonable period of time.  Further, they contend that the Chesterfield-Colonial Heights

Department of Social Services (the Department) did not make reasonable and appropriate efforts to

assist them in remedying those conditions.  This Court disagrees and affirms the judgment of the

circuit court.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] This dispute involves two children: B.B., the younger child, and C.C., the older.  The
circuit court terminated mother's rights as to both children, but only terminated father's rights as
to the younger, the only one of which was his biological child.

BACKGROUND[2]

In January 2022, the Department received notice for foster care prevention services from the Colonial Heights Juvenile and Domestic Relations District Court of child in need of supervision (CHINS) petitions for the Blalocks' two children, then 7 and 13 years old. The JDR court deemed the children in need of supervision because they had missed 96 of 152 school days. Additionally, the children's medical and mental health needs "were not being addressed," and they had witnessed domestic violence between mother and father.

Following the CHINS hearing, the Department attempted to complete a comprehensive family assessment with mother on nine separate occasions, and offered the family multiple services, including educational testing for the children. Mother canceled the assessments "citing lack of internet access, lack of water in the home due to a disconnection, inability to locate documents due to a recent move, and health emergencies." The Department eventually made an unannounced visit to the home during a school day and found the parents and the children sleeping. Despite mother's claims that she homeschooled the children, she was unable to access for the Department the educational website that the children used to complete schoolwork.

In March 2022, the JDR court held CHINS review hearings for both children. During the hearing, mother tested positive for alcohol, marijuana, cocaine, and buprenorphine. Father tested positive for alcohol, marijuana, and cocaine. The JDR court ordered both children be placed in the sole legal and physical custody of the older child's paternal aunt. As the parties were leaving the CHINS hearing, however, mother interacted with the older child, who then became

---

[2] "On appeal, 'we view the evidence and all reasonable inferences in the light most favorable to the prevailing party below, in this case the Department.'" *Joyce v. Botetourt Cnty. Dep't of Soc. Servs.*, 75 Va. App. 690, 695 (2022) (quoting *Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 375, 386 (2012)). "To the extent that this opinion discusses facts found in sealed documents in the record, we unseal only those facts." *Brown v. Virginia*, 302 Va. 234, 240 n.2 (2023).

"observably upset" and "verbally aggressive towards all parties present." The older child refused to leave the courthouse with the paternal aunt, who then declined to accept custody of the children. Thus the Department assumed custody of the children.

Following the children's removal, the initial foster care goal was for them to return home. The Department required parents to maintain a stable home environment and income with "no lapses in utilities." Mother also had to undergo psychological evaluations and follow any resulting recommendations, engage in parenting support services, and have regular supervised visitations with the children. The Department required the parents to submit to regular drug screenings, participate in ongoing substance abuse counseling, and maintain sobriety.

The parents each underwent substance abuse assessments. Mother was diagnosed with alcohol abuse, and father was diagnosed with alcohol abuse, cocaine abuse, and cannabis abuse. They completed 12 weeks of substance abuse counseling, but did not continue with further treatment, and both denied having problems with substance abuse. During an April 2022 JDR court hearing, father tested positive for alcohol, and mother tested positive for alcohol and buprenorphine. In September 2022, mother tested positive for cocaine and two cocaine metabolites. In October 2022 and January 2023, father tested positive for cocaine and "an unusually high level" of cocaine metabolite. In February 2023, both parents tested positive for alcohol. Mother again tested positive for alcohol in October 2023.

Parents engaged in 15 sessions of parent support services in July 2022, but ultimately were discharged for 30 consecutive days of non-attendance, "reportedly due to scheduling problems." Father completed the psychological assessment in September 2022 and was recommended to engage in continuous individual therapy. Although father began therapy, he ended it in November 2022. At the same time, mother underwent the psychological assessment

and was recommended to engage in continuing individual therapy. Like father, mother began therapy but discontinued it. Both parents claimed to have trouble scheduling appointments.

The parents did not establish documentation of stable income to the Department. When the children first entered foster care, father reported that he worked at Walmart but was on short-term disability. The Department did not ever receive documentation confirming his disability. He remained unemployed through the pendency of the foster care case. In that time, he did not apply for Medicaid or extended disability benefits.

At the outset of foster care, mother reported that she was unemployed. At trial, mother reported that she formerly worked at McDonald's as a general manager. She provided the Department with three pay stubs reflecting that fact. However, she quit in March 2023 "to give herself more time to complete the Departments requirements to having her children returned." The parents claimed they had received an inheritance which they used to support themselves, but they did not provide any documentation to substantiate that claim.

The Department conducted a scheduled home visit in April 2023 to determine if the parents' home was suitable for the children's return. The residence smelled of urine, and Department officials observed gnats and cockroaches inside the residence. There were stains in the bathtub from sewage backup. The Department noticed "cat urine, blood, [and] diarrhea on the windowsills" of the younger child's bedroom. In the older child's bedroom—at that point being used as the parents' own room—the floor was covered with trash, clothes, and cigarette butts. The Department worker who visited the home had to walk atop the trash to get into the room. There was a dog in the home with a history of biting people. The Department found no evidence of preparation for the children's return; for example, there were no beds for the children.

At the beginning of their foster care placement, each child presented with numerous physical and mental health concerns. Before entering foster care, the older child was diagnosed with ADHD and adjustment disorder with depressed mood. He had excessive absences from school—as many as 57 in one school year. The younger child had enlarged tonsils, and she needed corrective surgery on her right eye. She read below grade level and missed 58 days of the first grade.

During their foster care placement, the children saw their needs met. They both attended school. They both had ongoing medical appointments, including a physical and immunizations. After entering foster care, the older child underwent a psychological evaluation and began attending regular therapy appointments. While in foster care, the younger child "achieve[d] a state of normalcy," excelled in school, and participated in a number of community activities. The younger child received necessary medical care for her tonsils and eyes.

The Department petitioned for termination of both parents' parental rights, which, the JDR court granted in June 2023. The parents appealed to the circuit court. During the circuit court hearing, Rebecca Bowman, a Department family service specialist, testified that after the children entered foster care, the Department assigned a parent support worker to help the parents with scheduling appointments for therapy and medical needs, assist with housing and cleaning the residence, and "making a plan to address each of [the requirements] step by step." The parents, however, were discharged from the service for noncompliance before they could benefit from the assistance of the parent support worker. The Department also provided the parents with case management services to help with "various topics relating to parenting [and] relating to support for substance use." The parents were also discharged from that program for noncompliance. Bowman acknowledged that the Department did not pay for additional substance abuse screens and counseling. The Department also did not provide funds to parents

for extermination and beds for the children because mother had indicated that she and father would provide them.

Mother testified that after the Department's scheduled home visit, she and father had cleaned the home and prepared it for the children's return. However, the parents did not inform the Department of the improvements they had made. Mother also testified that she was unemployed for a time, but that she had obtained new employment at a local gas station. As for her alcohol use, mother denied knowing why she tested positive for alcohol in several of the urine tests and testified that she was seeking medical help to determine the cause.

Father testified that he was not able to work due to diabetes. He further testified that he received short-term disability benefits for a time, but had not yet been approved for social security disability benefits. Father testified that, until then, he and mother were using the inheritance he received to pay their living expenses.

After considering the evidence, the circuit court terminated mother's parental rights to both children, and father's rights to the younger child, under Code § 16.1-283(C)(2).[3] The parents appeal.

ANALYSIS

On appeal, the parents argue that the evidence failed to show that they were, without good cause, unwilling or unable to substantially remedy the conditions that led to the children's foster care placement. They assert that they sought substance abuse treatment and that most of father's drug screens were negative. The parents also argue that they had a stable home and income, and underwent therapy and parenting training. Even if they had failed to remedy the

_____

[3] The Department changed the foster care goal to adoption. In the final order, the circuit court ordered a later annual review of the goal.

conditions that led to the children's foster care placement, they argue, the Department did not make "reasonable and appropriate efforts" to assist them.

Code § 16.1-283(C)(2) authorizes a court to terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child[ren], but on the demonstrated failure of the parent to make reasonable changes" to the circumstances that led to the children's removal from the home. *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 552 (2018) (first alteration in original) (quoting *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 271 (2005)). "On review of a trial court's decision regarding the termination of parental rights, we presume the trial court 'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Joyce v. Botetourt Cnty. Dep't of Soc. Servs.*, 75 Va. App. 690, 699 (2022) (quoting *Norfolk Div. of Soc. Servs. v. Hardy*, 42 Va. App. 546, 552 (2004)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Simms v. Alexandria Dep't of Cmty. & Hum. Servs.*, 74 Va. App. 447, 470 (2022) (quoting *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011)).

The evidence supports the circuit court's finding that the parents had not substantially remedied the conditions that led to the children's placement in foster care. The Department was concerned over the children's school attendance, the suitability of the home, and the parents' drug and alcohol use. The record supports finding that the parents did not create a suitable home

environment for the children—as of the Department's most recent visit, the home still presented significant concerns about its sanitation and safety.

Mother failed to participate in parent support services, individual therapy, and case management. Mother did not obtain regular work—claiming she quit to work towards the Department's reunification goals. The parents failed to corroborate their claims concerning additional income. While mother denied having any addictions, she repeatedly tested positive for drugs and alcohol. She last tested positive for alcohol ahead of the termination hearing in October of 2023—*after* completing substance use treatment.

Father similarly did not remedy the conditions that led to the children's placement into foster care. Throughout the pendency of the proceeding, he suffered from an apparently unresolved alcohol use disorder. Like mother, father downplayed the significance of this. He last tested positive for alcohol in February of 2023. He did not establish stable income. Nor did he ever substantiate his claims that he received disability benefits. While he initially claimed that he was on short-term disability, father stated at trial that he needed longer-term support; he did not establish that he would pursue these benefits. While he testified that he and mother were living off father's inheritance, the Department did not receive any documentation supporting this claim.

Meanwhile, the children's health and school attendance improved while they were in the Department's custody. Before taking the children into custody, the Department was concerned over their health and school performance. The record shows that the children thrived afterward. They regularly attended school and received necessary mental and physical health care.

Any progress that the parents had made came too late because they did not adequately progress on the requirements imposed by the Department to remedy the children's placement in foster care. *See Thach v. Arlington Cnty. Dep't of Hum. Servs.*, 63 Va. App. 157, 171 (2014) (a

court "may discount the parent's current 'progress' if the best interests of the child[ren] would be served by termination" (quoting *L.G. v. Amherst Cnty. Dep't of Soc. Servs.*, 41 Va. App. 51, 56 (2003))).

On the other hand, the record establishes that the children were thriving in foster care. They regularly attended school and received necessary mental and physical health care. At the time of the circuit court hearing, the children had been in foster care for approximately 18 months. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming [their] responsibilities." *Simms*, 74 Va. App. at 463 (quoting *Harrison v. Tazewell Cnty. Dep't of Soc. Servs.*, 42 Va. App. 149, 162 (2004)).

The parents also argue that the Department did not make "reasonable and appropriate efforts" to help them remedy the conditions leading to foster care. They fault the Department for "impos[ing] a long litany of conditions" they had to meet without providing "funding or transportation or accommodations or ways for the parents to balance all of these requirements." It is true that the Department must make "'reasonable and appropriate efforts' . . . to remedy the conditions leading to foster care . . . ." *Joyce*, 75 Va. App. at 701 (second alteration in original) (quoting *Weaver v. Roanoke Dep't of Hum. Res.*, 220 Va. 921, 929 (1980)). Yet the Department "is not required to force its services upon . . . unwilling or disinterested parent[s]." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 323 (2013). The Department offered the parents services three months before the children entered foster care to avoid removal, but mother repeatedly cancelled the appointments. After the children entered care, the Department provided parent support services and case management, but the parents were discharged from those programs for noncompliance. Nor does any evidence in the record establish that either

mother or father asked the Department for transportation services or for funds to improve the home.

"'[R]easonable and appropriate' efforts of the Department can only be judged with reference to the circumstances of a particular case." *Joyce*, 75 Va. App. at 701 (quoting *Harrison*, 42 Va. App. at 163). The record supports the circuit court's finding that the Department offered reasonable and appropriate services to the parents. They did not avail themselves of the services they were offered. The circuit court did not err by finding that terminating mother and father's parental rights was in the children's best interests.

CONCLUSION

For the foregoing reasons, this Court affirms the circuit court's judgment.

*Affirmed.*